IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

Case No.:  3:25CR176-DMB

LINDSEY ALDY WHITESIDE

## EMERGENCY MOTION FOR REVIEW AND
## REVOCATION OF RELEASE ORDER

COMES NOW, the United States of America, by and through the United States Attorney for the Northern District of Mississippi, and respectfully moves this Court to review and revoke the Magistrate Judge's order releasing LINDSEY ALDY WHITESIDE on a $60,000 unsecured bond pending trial.  The Magistrate Judge stayed that Order for twenty-four (24) hours pending the Government's appeal. In support whereof, the United States states as follows:

## BACKGROUND

The Northern District of Mississippi grand jury indicted LINDSEY ALDY WHITESIDE on two counts of transportation of a minor across state lines for illicit sexual purposes and one count of enticement of a child. WHITESIDE was a youth pastor in Hernando, Mississippi during the time periods alleged. In her capacity as a youth pastor, WHITESIDE counseled the child identified as Minor Victim 1 in the Indictment. The allegations underlying the Indictment stem from two different church-related trips – one to Tennessee, and another to Atlanta then Tennessee, all in the Summer of 2024. The minor disclosed that on each of those trips, as well as several times a week during their association, there was vaginal and oral penetration by WHITESIDE. The minor disclosed, and text messages between the two corroborate, that decisions were made by WHITESIDE to isolate the minor from the church group and her family in order to perform the sexual conduct on those trips.

Earlier, WHITESIDE pled guilty to the state court charges of Sexual Battery of a Minor by a Person in a Position of Trust or Authority. She was sentenced to three years of house arrest, which requires her to wear an ankle monitor, but places no other restrictions on her movements or conduct. The conviction does require her to register as a sex offender wherever she lives, works, or goes to school.

In light of the federal charges, the United States asked the magistrate judge to detain WHITESIDE without bail pending trial. The government sought defendant's detention, pursuant to Title 18, United States Code, Sections 3142(f)(1) and 3142(e)(3)(E), on the grounds that the charged offenses are crimes of violence and involve a minor victim. Because of the nature of the crimes, the defendant is subject to a rebuttable presumption under both of those statutes that she should be detained pending trial.

A detention hearing was held on the afternoon of October 28, 2025. At that hearing, the United States presented testimony of Deputy Miranda Fox of the Desoto County Sheriff's Department. Deputy Fox testified about the nature of the allegations and the conduct that WHITESIDE pled guilty to. In addition, Deputy Fox testified that WHITESIDE's housing option was not compliant with her sex offender registry obligations. WHITESIDE was given until November 16, 2025, to find registry-compliant housing by the Desoto County Sex Offender Registry officials. She had no compliant housing as of the hearing.

The defendant presented one witnesses at the detention hearing – the defendant's mother. She testified that WHITESIDE was not a danger to the community at large.

The presiding Magistrate Judge denied the United States' detention motion and released the defendant on a $60,000 unsecured bond. The United States moved for a 24-hour stay pending appeal which was granted by the Magistrate Judge.

2

On account of the charges WHITESIDE faces for this exploitative conduct, the law presumes that she should be detained. The United States hereby seeks review and revocation of the Magistrate Judge's release order pursuant to Title 18, United States Code, Section 3145. The United States requests that this Court uphold the presumption, find LINDSEY ALDY WHITESIDE to be a danger to other persons and the community by clear and convincing evidence, and order the defendant detained pending trial.

## ARGUMENT

Title 18, United States Code, Section 3145(a) states:

> (a) Review of a release order – If a person is ordered released by a magistrate, . . .

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . . The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the magistrate judge's denial of pre-trial detention, as if the Court were reviewing its own action. *See United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir. 1981) (then construing 18 U.S.C. § 3147, where the current 18 U.S.C. § 3145 was formerly codified) ("The statutory scheme adopted in [18 U.S.C. § 3145] confers a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer . . . as unfettered as it would be if the district court were considering whether to amend his own action. He is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer."); *see also United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) ("In our view a district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of

a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion.").

Accordingly, in its discretion, this Court may proceed to rehear the evidence to support detention by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. *See United States v. Little*, 235 F. Supp. 3d 272, 277 (D.D.C. 2017). It may take additional evidence from new witnesses or consider arguments not raised previously. *Id*. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the safety of any other person and the community, considering the rebuttable presumption of detention applicable to the defendant.

Under any standard of review, the release order and conditions ordered by the Magistrate Judge are wholly insufficient to address the risk of danger WHITESIDE poses to the community.

1. <u>Presumption of Detention</u>

The defendant is subject to a rebuttable presumption of detention pursuant to Title 18, United States Code, Section 3142(e)(3)(E), because the charged offenses involved minor victims, and pursuant to Title 18, United States Code, Section 3142(f)(1)(A), because the charged offenses are defined as crimes of violence. *See* 18 U.S.C. § 3156(a)(4)(A) (defining crime of violence to include any felony violation of chapter 117 of Title 18, which includes 18 U.S.C. Sections 2423 and 2422).

The rebuttable presumption shifts to the defendant the burden of producing evidence that the defendant is not a danger to the community. *See United States v. Portes*, 786 F.2d 758 (7th Cir. 1985). A defendant satisfies his burden of production when he "com[es] forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Although a defendant's burden of production "is

4

not heavy," he must introduce at least some evidence. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir.1991); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."). Even if the defendant presents some evidence favoring his release, the Court should weigh the presumption in favor of pretrial detention as one of the factors to be considered along with those set forth in Section 3142(g). *Portes*, 786 F.2d at 764 ("the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)"). *See also United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985) ("although the presumption against bail is rebuttable, . . . it continues to weigh in the balance against bail even after the defendant meets his burden of producing some evidence to rebut the presumption.").

The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010). Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), abrogated on other grounds by *United States v. O'Brien*, 895 F.2d 810 (1st Cir.1990), ("Congress intended magistrates and judges, who typically focus only upon the particular cases before them, to take account of the more general facts that Congress found"); *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) ("[T]he presumption of dangerousness . . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions."). To rebut the presumption, therefore, a defendant

5

should "present all the special features of his case" that take it outside "the congressional paradigm [.]" *Jessup*, 757 F.2d at 387.

In 2006, Congress passed the Adam Walsh Act, which amended the Bail Reform Act of 1984 with respect to offenses related to sexual exploitation of children. Congress determined that due to the danger these defendants pose to the community both the presumption of detention applies and release is warranted only if the defendant can be safely monitored with highly restrictive conditions. The findings included in the text of the Adam Walsh Act clarify that the congressional intent behind the Act was to protect those most vulnerable to predators with prurient interests: children. This is especially true in a case such as this where the defendant is alleged to have engaged a minor under her care in her pastoral capacity to engage in illicit sexual conduct.

WHITESIDE groomed the minor and her family over an extended period of time in order to gain their trust. Once the grooming was complete, WHITESIDE was able to convince the family to allow WHITESIDE to take their minor child across state lines in order to sexually abuse her. WHITESIDE leaned on her role within the church to gain access to the child, open lines of communication to the family and the child, transport the child interstate, and sexually abuse the child. The family of the victim had no idea this conduct was occurring, and WHITESIDE's own mother had no idea this conduct was occurring. This conduct shows that WHITESIDE is a danger to the community in that she built trust between the victim's family and herself in order to facilitate the abuse and showed no outward signs to her own mother that she was engaging in illicit sexual conduct with a minor.

As noted in the hearing, the exposure of WHITESIDE's conduct has been extremely divisive in the community. WHITESIDE's mother testified that many families are supporting

6

her. One family in particular has small children that WHITESIDE has had access to since her conviction. In fact, the Mississippi Department of Corrections ankle monitor location data shows that she visited the house of these supporters immediately after signing up for the sex offender registry. WHITESIDE's mother admitted they were at the house to care for the sick child because of their close relationship with that family. This is a limit of any GPS monitoring system. Officers watching those coordinates often do not know who lives in a house at which the GPS pings, the supportive families are not cognizant of the danger they are putting their small children in, and officer would be limited to reactive measures after any inappropriate conduct.

WHITESIDE is a convicted sex offender. This is precisely why the presumption of detention exists in this situation – to safeguard the public from the danger the offender poses. The risk of harm to the community is great, when, as here, the defendant has perpetuated these crimes in such a community without detection.

WHITESIDE should be presumptively detained pending trial.

2. <u>Release Conditions are Insufficient to Address Risk of Danger Posed to the Public</u>

The release conditions imposed are insufficient to ameliorate the risk of danger WHITESIDE poses to the public. In particular, the Magistrate Judge placed WHITESIDE on home incarceration, GPS monitoring, and restricted her ability to view, possess, or peruse sexually explicit material, including child sexual abuse material.

WHITESIDE's conduct showed that she excelled in grooming and manipulating others to commit heinous acts against a child. She has been given access to children based on her family contacts. While the Magistrate Judge's restrictions may prevent her from leaving her yard, there is no protection for children whose parents or guardians trust and support WHITESIDE if they are brought into the home prior to trial.

7

Under the conditions of release imposed, WHITESIDE was allowed to keep her cell phone. These conditions are inadequate given the nature of WHITESIDE's conduct. As testified by Deputy Fox, the case against WHITESIDE is supported by 64,000 pages of text messages between WHITESIDE and the minor. There was constant contact between the two during the relevant time periods. Any contact by WHITESIDE to the victim in this case would be devastating. WHITESIDE was able to perpetuate these crimes against this minors for so long without their disclosure due to her grooming efforts. Her unfettered ability to contact victims or potential witnesses, despite the court's admonishment not to, is a danger to the community that is unchecked by these conditions.

The court ordered active GPS monitoring. This condition does not adequately protect the public in these circumstances. With this condition, the court will simply have to trust that WHITESIDE – who has dedicated months of her adult life to engaging in and successfully concealing criminal conduct – will choose not to hide her illicit activity. Further, GPS monitoring does not restrict her accessing applications on her cell phone. There is simply no available condition to address the risk of harm this defendant poses.

The potential sentence of imprisonment WHITESIDE faces is significant if convicted of these crimes. Each count charged alone carries a mandatory minimum sentence of ten (10) years to life. The defendant should be detained pending trial of this matter.

## CONCLUSION

Under these circumstances, it is presumed that the defendant should be detained, and the government made a showing that no conditions or combination of conditions will ensure the safety of the community or the appearance of the defendant. *See* 18 U.S.C. § 3142(f)(2)(A). The

government urges this Court to revoke the pending release order and direct that the defendant remain detained pending trial.

As a result, the government respectfully requests review and revocation of the decision of Magistrate Judge to release the defendant and to order instead that he be held without bond pending trial.

Respectfully submitted,

CLAY JOYNER
United States Attorney

 /s/ *Parker S. King*
Parker S. King
Assistant United States Attorney
Miss. Bar No. 102499
900 Jefferson Avenue
Oxford, Mississippi 38655
Telephone: (662) 234-3351

CERTIFICATE OF SERVICE

I, Parker S. King, attorney for the United States, do hereby certify that I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system, which provided

notification to all parties of record.

This the 29th day of October, 2025.

/s/ *Parker S. King*
PARKER S. KING
Assistant United States Attorney